IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEVEN PARIS ARTHUR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-2777 |
| | § | |
| OFFICER MOHAMMED BELLAHNA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Steven Paris Arthur, a state inmate proceeding *pro se* and *in forma pauperis*, filed this section 1983 lawsuit against Houston Police Department ("HPD") Officer Mohammed Bellahna.[1] Defendant Bellahna filed a motion for summary judgment with supporting affidavits and records, and certified that a copy was mailed to plaintiff at his address of record. (Docket Entry No. 46.) Despite expiration of a reasonable period of time, plaintiff has not responded to the motion, and the motion is deemed uncontested.

Having considered the motion, the pleadings, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this lawsuit for the reasons explained below.

---

[1] Plaintiff identifies Officer Bellahna as the defendant in his complaint. (Docket Entry No. 1, p. 3.) Although his reference to "Houston Police Dept. Officer Bellahna" could be construed as naming HPD as a separate defendant, plaintiff pleads no factual allegations raising a claim against HPD. Thus, the Court does not construe the complaint as naming HPD as a separate defendant.

***Background and Claims***

Plaintiff pleads the entirety of his claim in this lawsuit as follows:

> On the night of Dec 3 2017 while I was surrendering with my hands above my head. Officer Bellahna while standing only 3 feet from me lowered his taser from chest highth [sic] to my private area and fired his taser into me.

(Docket Entry No. 1, p. 4.) Plaintiff asserts that Officer Bellahna "tased me in my crotch while my hands were up." *Id*., p. 3. As judicial relief, plaintiff states "I want monitary [sic] restitution of $380[,]000." *Id*., p. 4.

In his motion for summary judgment, defendant Bellahna submits excerpts of plaintiff's deposition testimony, wherein plaintiff admitted that Bellahna tased him in the thigh, not the crotch. Bellahna submits police reports and an affidavit showing that plaintiff did not surrender upon repeated requests and that deployment of the taser was necessary to take him into custody. Bellahna seeks qualified immunity and dismissal of plaintiff's claims against him.

***Summary Judgment Standards***

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

In response, the nonmovant may not rely upon mere allegations contained in the pleadings and must set forth and support by probative summary judgment evidence specific facts showing the existence of a genuine issue for trial. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show there is a genuine issue for trial. *Stults*, 76 F.3d at 655. Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Id*.

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of

proof at trial. *Celotex Corp.*, 477 U.S. at 322. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 322–23.

### *Analysis*

*No Factual Basis*

The Court is compelled to note in the first instance that plaintiff refuted at his deposition the sole claim he pleads in his complaint – that defendant Bellahna intentionally tased him in his "private area" or crotch. At his deposition, plaintiff plainly and repeatedly stated that Bellahna tased him in his thigh and *not* in his groin, private area, or crotch:

> Q: After you were tazed, one prong, you're claiming went about an inch to an inch and a half into your right thigh near your groin, right?
>
> A: Yup.
>
> Q: Did it go into your groin?
>
> A: No. I had –
>
> Q: Did it go into your private area?
>
> A: Nope.
>
> Q: It was just in your thigh?
>
> A: Yup.

(Docket Entry No. 46-5, pp. 4–5.) Bellahna presents this deposition testimony as evidence supporting his motion for summary judgment.

4

Because plaintiff himself has established that his Fourth Amendment excessive force claim as pleaded has no factual basis, Bellahna is entitled to summary judgment dismissal of the claim. Nonetheless, the Court will address, in the alternative, whether defendant is entitled to summary judgment dismissal of a Fourth Amendment claim premised on his deployment of his taser to plaintiff's thigh.

*Use of Excessive Force*

Plaintiff's allegations of use of excessive force during his arrest raise a claim under the Fourth and Fourteenth Amendments. To prevail on a Fourth Amendment excessive force claim, a plaintiff must show that he (1) suffered an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need, and (3) the force used was objectively unreasonable. *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017); *Pratt v. Harris County*, 822 F.3d 174, 181 (5th Cir. 2016). The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham v. Connor*, 490 U.S. 386, 396 (1989). That is, excessive force claims are "evaluated for objective reasonableness based on the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2001). The analysis must also embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. *Graham*, 490 U.S. at 396–97.

Ultimately, the question is whether an officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. *Id*. at 397. The question is assessed under the totality of the circumstances, including (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether he was actively resisting arrest or attempting to evade arrest by flight. *Id*. at 396; *see also Pena v. City of Rio Grande*, 816 F. App'x 966, 970 (5th Cir. June 8, 2020). Excessive force claims are necessarily fact intensive and depend on the facts and circumstances of each particular case. *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012).

A significant injury is not required to support an excessive force claim, but the injury must be more than *de minimis*. *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005). Although a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the particular circumstances of the case. *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013).

The probative summary judgment evidence shows that the force used by Bellahna was objectively reasonable so as to render *de minimis* any injury incurred by plaintiff in being tased in the thigh. *See Brown*, 524 F. App'x at 79. Plaintiff testified in his deposition that Bellahna fired his taser at him only once, striking him in the thigh, but not in the abdomen.

(Docket Entry No. 46-5, p. 3; "My right thigh. No abdomen.").[2] In his affidavit submitted in support of summary judgment, Bellahna testifies, in relevant part, as follows:

> In this lawsuit, I have reviewed Plaintiff's petition and understand that he has alleged that I used excessive force when I used my Taser on him to effect his arrest on December 4, 2017. At the time of Plaintiff's arrest, I was aware of and knew from my law enforcement education, training and experience that pursuant to Section 9.31, Texas Penal Code, a person (including a peace officer) is justified in using force against another when and to the degree the person reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. I also knew on December 4, 2017 that pursuant to Section 9.51(a), Texas Penal Code, a peace officer is justified in using force against another when and to the degree the officer reasonably believes the force is immediately necessary to make an arrest or to prevent escape after arrest if the officer believes the arrest is lawful and before using force the officer reasonably believes that his purpose and identity are already know to the person to be arrested.
>
> On December 4, 2017, I was dispatched to the AT&T store located at 11805 Westheimer Road regarding a complaint of a female being held against her will. I was a solo unit in a marked police vehicle and in full police uniform at all relevant times. I however, did not have a body w[o]rn camera at this time.
>
> Upon arrival on the scene, I made contact with the store manager and she informed me that a male suspect, later identified as Plaintiff, had left with a female victim. I then learned from dispatch that the female victim, identified as Kristen Spencer was dropped off at the HEB Grocery store in the same vicinity. I immediately drove to the grocery store and made contact with Ms. Spencer. Ms. Spencer advised me that Plaintiff held her against her will and threatened to kill her if she left. She also informed me that Plaintiff had a large knife with him. Ms. Spencer also stated that Plaintiff punched her multiple times in the arm causing her pain and that she felt pain in her wrist. I observed bruising to Ms. Spencer's arms as I spoke with her and was informed later that her wrist was broken.

---

[2]Defendant Bellahna states in his summary judgment affidavit that his taser had two "prongs" and that he deployed it once. One of the prongs struck plaintiff in the abdomen, and he did not see where the other prong went. (Docket Entry No. 46-3, p. 4.)

While gathering more information from Ms. Spencer, she pointed out that Plaintiff was driving in the HEB parking lot and pointed out his vehicle. I looked and observed Plaintiff driving in the parking lot with a male on top of Plaintiff's vehicle screaming for help. Based on my training, education and experience, I knew that pursuant to Section 22.01, Texas Penal Code, a person commits the offense of assault if the person intentionally and knowingly causes bodily injury to another or threatens another with imminent bodily injury. I also knew on December 4, 2017, that pursuant to Article 14.03(a)(2), Texas Code of Criminal Procedure, a peace officer may arrest, without a warrant, a person who the peace officer has probable cause to believe has committed an assault resulting in bodily injury to another and the peace officer has probable cause to believe that there is danger of further bodily injury to that person.

I quickly got into my marked police unit, activated emergency lights, and attempted to stop Plaintiff. As I got behind Plaintiff's vehicle in the parking lot, the male fell off the Plaintiff's vehicle. Plaintiff did not stop and drove out of the parking lot onto Westheimer Road. I continued to pursue him, with my emergency lights activated, down Westheimer through traffic. Plaintiff was driving extremely fast and weaving between vehicles. Plaintiff exited his vehicle when he became blocked by vehicles stopped at a red light at the intersection of Hayes and Westheimer and fled on foot into a residential area.

Based on my training, experience and education, I knew that on December 4, 2017, that pursuant to Section 38.04, Texas Penal Code, a person commits the offense of evading arrest if the person intentionally flees from a person he knows is a peace officer attempting lawfully to arrest him. I also knew that pursuant to Article 14.01(b), Texas Code of Criminal Procedure, a peace officer may arrest an offender for any offense committed in his presence or within his view. Plaintiff evaded arrest in his vehicle and on foot.

I never lost sight of Plaintiff as he was evading me on foot. During this time, I gave him multiple verbal commands to stop and he failed to comply. Plaintiff eventually turned and faced me; however, I could not see his hands due to poor lighting conditions in the residential area. Knowing that Plaintiff may have a knife on his person coupled with probable cause to arrest him for committing assault and felony evading, I pulled out my Taser, pointed it at Plaintiff's chest area and ordered Plaintiff to put his hands behind his back. I warned Plaintiff that if he did not comply, I would taser him. Plaintiff, who was agitated, refused to comply and walked away from me. Plaintiff then

turned around and faced me waving his arms at me while asking why he was going to jail. I, with my Taser drawn, again ordered Plaintiff to put his arms behind his back and warned him a second time that I would taser him if he did not comply. Plaintiff again ignored my commands, turned around and walked away.

*I continued to give Plaintiff verbal commands to stop and place his hands behind his back as I followed him. Plaintiff, a third time, turned around and reached for his waistband with both hands. I knew from my training, education and experience, that the waistband is a common area used by criminal suspects to conceal weapons. Fearing that Plaintiff was attempting to pull the knife that Ms. Spencer said he had in his possession, I deployed my Taser and struck Plaintiff in the abdomen.* I did not know if or where the second prong made contact. Nonetheless, Plaintiff fell onto a grassy area and removed the taser prong from his abdomen. *At this time, I was able to detain Plaintiff, place him in handcuffs* and notify dispatch that EMS was needed due to a Taser deployment.

Other police units arrived, and Plaintiff was transported back to 11805 Westheimer Roadby Officer Whitaker. Based on Officer Whitaker's body warn camera video, the second taser prong lodged in or near the pocket on Plaintiff's leg. It was not his groin area as alleged in his complaint.

At all relevant times, I believed that my actions were lawful and justified based on the facts known to me and the applicable law relating to the Fourth Amendment. A reasonable peace officer, possessing the information known to me at the time I tasered Plaintiff, could have believed that the amount of force I used was reasonable and necessary under the circumstances.

At all times during the incident, I was acting in good faith and within the scope of my discretionary authority as a peace officer. My actions during the events at issue were undertaken pursuant to the exercise of the authority vested in me as a City of Houston police officer. State and federal law permit the use of force when reasonably and necessary to make an arrest or to prevent escape. I at no time acted with an intent to deprive Plaintiff of any of his legally protected rights. I did not violate clearly established law of which a reasonable person would have known, and I never used excessive force against Plaintiff.

(Docket Entry No. 46-3, pp. 2–4, emphasis added.)

9

Thus, Bellahna had ordered plaintiff to stop walking away, but plaintiff was agitated, kept walking, turning, and talking. Plaintiff acknowledged in his deposition testimony that, even though Bellahna had ordered him to put his hands behind his back, plaintiff continued talking during Bellahna's efforts to arrest him:

> He has the taser aimed at my chest. Full blown. He's talking to me. He's like, "Put your hands behind your back." *I'm still trying to talk to him*.

(Docket Entry No. 46-5, p. 3, emphasis added.)

Not until plaintiff turned towards him a third time and reached for his waistband with both hands did Bellahna deploy his taser. Bellahna testifies in his affidavit that Spencer had informed him plaintiff was carrying a large knife, and Bellahna knew that criminal suspects commonly use waistbands to hide weapons. Fearing that plaintiff was attempting to pull his knife, Bellahna tasered him, striking him in the abdomen and an unknown second location. There is no probative summary judgment evidence in the record refuting or controverting Bellahna's testimony. Moreover, shortly after Bellahna arrested and handcuffed plaintiff, a second police officer arrived at the scene. The officer, Timothy Whitaker, testifies in his own summary judgment affidavit as follows:

> In this lawsuit, I understand that Steven Arthur ("Plaintiff") has alleged that Officer Bellahna used excessive force when Officer Bellahna deployed his Taser to effect Plaintiff's arrest on December 4, 2017. I was not present during the taser event at issue in this lawsuit. I arrived on scene after the Plaintiff had been detained by Officer Bellahna and then transported him back to 11805 Westheimer Road so that the investigation of the original call (assault or possible kidnaping) could be completed by Houston Police Department.

> After we arrived back to the original scene and in the presence of EMS, Plaintiff was questioned about where he was struck by the taser prongs. Plaintiff stated he was hit in the leg and pulled the other prong out. EMS located the taser prong near his pocket on his pants and pulled it out while Plaintiff stated "ooh, that felt good" or similar words. Plaintiff did not complain of pain or any injury as a result of be [*sic*] tasered by Officer Bellahna.

(Docket Entry No. 46-4, pp. 1–2.) Plaintiff informed jail medical staff during his booking that he had a history of chronic drug abuse (methamphetamine) and had been tased. He was provide acetaminophen for pain. (Docket Entry No. 49-1, pp. 4, 7.)

Under the totality of the circumstances factors for assessment, the probative summary judgment evidence shows that Bellahna attempted to place plaintiff under arrest for suspicion of assaulting and/or kidnaping Spencer with use of a knife, a violent crime against a person. Although plaintiff had thought he was being apprehended for possible credit card abuse (Docket Entry No. 46-5, p. 3), he was aware that Bellahna was attempting to detain him, and he fled. Bellahna gave chase, first by car then on foot, knowing that plaintiff was likely armed with a large knife. He repeatedly ordered plaintiff to stop and place his hands behind his back, but plaintiff kept walking away and turning towards him, agitated and waiving his arms, asking why he was going to jail. Bellahna warned plaintiff that if he did not stop and comply, he would be tased. The third time plaintiff walked away and turned towards Bellahna, it was with his hands reaching for his waistband. Fearing that plaintiff was reaching for the knife, Bellahna tased him. Bellahna was then able to detain and handcuff plaintiff for further processing. Thus, the crime at issue was violent and severe; plaintiff

posed an immediate threat to Bellahna's safety; and plaintiff had been attempting to evade arrest by continuing to walk away while agitated and waiving his arms around, until he turned towards Bellahna and reached for his waistband with both hands. Bellahna's actions were objectively reasonable in light of the facts and totality of the circumstances confronting him at the time. *See Graham v. Connor*, 490 U.S. 386, 397 (1989).

Plaintiff does not meet his burden of proof as to his Fourth Amendment excessive force claim against Bellahna, and Bellahna is entitled to summary judgment dismissal of the claim.

*Qualified Immunity*

Bellahna claims entitlement to qualified immunity. The doctrine of qualified immunity provides a defense against section 1983 claims to government officials who "make reasonable but mistaken judgments about open legal questions" and shields "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 733 (2011). This is an exacting standard. To overcome it, a plaintiff bears the heavy burden of showing that the official both violated a constitutional or statutory right and that this right was clearly established in the law prior to the challenged conduct occurring. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). That is, the plaintiff must establish that (1) a public officer's conduct violated a constitutional right and (2) that said conduct was objectively unreasonable in light

of clearly established law at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

When, as here, a defendant moves for summary judgment on the basis of qualified immunity, the court must decide: (1) whether the facts, taken in the light most favorable to the plaintiff, show the officer's conduct violated a constitutional right; and (2) whether that right was "clearly established" at the time of the defendant's alleged misconduct so that a reasonable official in the defendant's situation would have understood that his conduct violated that right. *See Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014).

Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. The Supreme Court has repeatedly instructed the courts "not to define clearly established law at a high level of generality." *City and County of San Francisco v. Sheehan*, 575 U.S. ____, 135 S. Ct. 1765, 1775–1776 (2015); *see also Ashcroft*, 563 U.S. at 742. "[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. ____, 136 S. Ct. 305, 308 (2015) (per curiam) (internal quotation marks omitted). As stated by the Supreme Court, use of excessive force is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue.

13

*Id*., at 309 (internal quotation marks omitted and emphasis deleted). *See also Kisela v. Hughes*, ___ U.S. ____, 138 S. Ct. 1148, 1153 (2018).

An official's use of excessive force in effecting an arrest violates the Fourth Amendment's protection against unreasonable seizures and, if established, satisfies the first prong of the qualified immunity analysis. *Pratt v. Harris County*, 822 F.3d 174, 181 (5th Cir. 2012). This Court has determined that the probative summary judgment in this case shows that Bellahna did not use excessive force in detaining plaintiff. Even so, plaintiff has not shown that existing precedent "squarely governs" the specific facts at issue such that Bellahna is not entitled to qualified immunity. Precedent involving similar facts can help move a case beyond the otherwise "hazy border between excessive and acceptable force" and thereby provide an officer notice that a specific use of force is unlawful. *Id*., at 312 (internal quotation marks omitted). At its core, then, the "clearly established" inquiry boils down to whether the police officer had "fair notice" that he acted, or would be acting, unconstitutionally. *See Kisela*, 138 S. Ct. at 1158.

Plaintiff has not directed this Court to any applicable authority holding that, as of December 4, 2017, a police officer is not entitled to qualified immunity in deploying a taser against a fleeing suspect in a violent crime who has turned towards him, reportedly has a knife or other weapon, and is reaching with both hands towards his waistband, a known location for hiding weapons. To the contrary, Bellahna cites relevant authority in his

14

summary judgment affidavit showing that he was authorized to deploy his taser under the circumstances of this case.

Plaintiff presents no probative summary judgment evidence or relevant legal authority proving that Bellahna is not entitled to qualified immunity in this case. Plaintiff's Fourth Amendment excessive force claim is dismissed with prejudice as barred by qualified immunity.

### *Conclusion*

Defendant Mohammed Bellahna's motion for summary judgment (Docket Entry No. 46) is GRANTED and this lawsuit is DISMISSED WITH PREJUDICE. Any and all pending motions are DENIED AS MOOT.

Signed at Houston, Texas on October 27, 2020.

_____
Gray H. Miller
Senior United States District Judge